**This version includes the errata of 30May02-e**

## UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 00-2083

ROGER D. PENTECOST, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided  May 24, 2002   )

*James W. Stewart* (non-attorney practitioner)*,* and *Barton F. Stichman*, both of Washington, D.C., were on the pleadings for the appellant.

*John H. Thompson*, Acting General Counsel; *Ron Garvin*, Assistant General Counsel; *Darryl A. Joe*, Acting Deputy Assistant General Counsel; and *Erica M. Dornburg*, all of Washington, D.C., were on the pleadings for the appellee.

Before FARLEY, IVERS, and STEINBERG, *Judges*.

IVERS, *Judge*:  The veteran, Roger D. Pentecost, appeals from a July 26, 2000, Board of Veterans' Appeals (BVA or Board) decision that determined that post-traumatic stress disorder (PTSD) was not incurred in, aggravated by, or otherwise the result of active-duty service.  Record (R.) at 3.  The veteran has submitted a motion for reversal, and the Secretary has submitted a motion for remand pursuant to the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000).  The Court notes that the veteran has not presented any arguments before this Court regarding the following three alleged in-service stressors, which the Board considered in its decision:  The veteran (1) read in *Stars and Stripes* that his "buddy," Robert Rusher, was killed in action in January 1968; (2) observed the body of an unidentified Marine mutilated by a mine or other explosive at a Da Nang hospital; and (3) observed an infant from a nearby village

whose head had been chewed on by a rat. The Court deems any argument pertaining to those three stressors abandoned and will not address them further. *See Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993). The veteran requests that the Court reverse the Board decision and order the Secretary to award service connection for PTSD. Motion (Mot.) at 10. The Secretary requests that the case be remanded for reajudication in light of the enactment of the VCAA and pursuant to *Holliday v. Principi*, 14 Vet.App. 280 (2001), and does not address the veteran's arguments on the merits. The Court will deny the Secretary's motion and address the veteran's request for reversal, a remedy greater than that proposed by the Secretary. *Cf. Mahl v. Principi*, 15 Vet.App. 37 (2001); *Best v. Principi*, 15 Vet.App. 18 (2001). This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons discussed below, the Court will reverse the July 26, 2000, Board decision and remand the matter for the Board to award service connection.

## I. FACTS

The veteran served in the U.S. Marine Corps from June 15, 1966 to June 4, 1968. R. at 45. He was stationed in Vietnam and served as a warehouseman and messman at the U.S. air base at Da Nang from February 4, 1967 to May 21, 1968. R. at 369. While stationed at Da Nang, the veteran's unit experienced enemy rocket attacks. R. at 454-55.

On March 3, 1993, the veteran filed a claim for service connection for, inter alia, PTSD. R. at 47. In April 1993, after a VA examination, the veteran was diagnosed with dysthymia, anxiety disorder, and somatization disorder. R. at 175. In an October 10, 1993, decision, a VA regional office (RO) denied, inter alia, service connection for PTSD. R. at 190-91. The RO found, "Service connection is denied for [PTSD], because a chronic nervous condition is not shown in service, and [PTSD] was not diagnosed on last examination." R. at 191. In May 1994, the veteran appealed the RO denial of service connection for PTSD to the Board. R. at 206-10. The veteran had a hearing before the Board in August 1996. R. at 212-57. In March 1997, the Board remanded his claim for PTSD to the RO for the RO to obtain medical records of the April 1993 PTSD evaluation with directions for the RO to readjudicate the PTSD claim. R. at 288. In January 1998, the RO declined to reopen the veteran's claim because new and material evidence had not been submitted. R. at 293. On several subsequent occasions the RO declined to reopen his PTSD claim also on the basis that

no new and material evidence had been submitted. R. at 292, 315, 326.

In January 1999, the Board remanded the veteran's claim for service connection for PTSD to the RO for further development. R. at 353. In April 1999, the veteran completed a PTSD screening questionnaire. R. at 404-07. In July 1999, the RO sent a letter to the Commandant of the Marine Corps requesting information to confirm the veteran's alleged stressors. R. at 401. The Commandant's office informed VA that the information the veteran provided was "insufficient for the purpose of conducting any meaningful research on the veteran's behalf." R. at 420. The veteran submitted to the RO various medical records dated between March and August 1999. R. at 410-18, 424-30. According to an August 1999 VA compensation and pension examination report by a VA physician, the veteran was diagnosed with chronic PTSD. R. at 434. In January 2000, the RO denied the veteran's claim for PTSD because the evidence reviewed did "not establish that a stressful experience occurred." R. at 469. On July 26, 2000, the Board denied service connection for PTSD. R. at 10. The Board found that the stressors that the veteran claimed to have been exposed to in Vietnam had not been verified. *Id.*

## II. ANALYSIS

Service connection for PTSD requires the presence of three elements: (1) A current diagnosis of PTSD; (2) credible supporting evidence that the claimed in-service stressor actually occurred; and (3) medical evidence of a causal nexus between the current symptomatology and the claimed in-service stressor. 38 C.F.R. § 3.304(f) (2001); *see Cohen v. Brown*, 10 Vet.App. 128, 138 (1997). Where a current diagnosis of PTSD exists, the sufficiency of the claimed in-service stressor is presumed. *Id.* at 144. Nevertheless, credible evidence that the claimed in-service stressor actually occurred is also required. 38 C.F.R. § 3.304(f).

The Board found that "VA examination reports and clinical treatment records contain current diagnoses of PTSD." R. at 3. It further noted:

> [T]he medical evidence in the claims folder contains several references to stressors
> to which the veteran has claimed he was exposed during his service in Southeast Asia
> during the Vietnam Era. Such evidence, at least by implication, suggests a nexus
> between the veteran's current disability from PTSD and the claimed in-service

3

stressors.

R. at 3-4. The Board opined that "[t]he veteran's essential problem is that he lacks a verifiable stressor." R. at 5. Indeed, in its January 7, 2000, Statement of the Case, the RO seems to have limited its inquiry to the stressor element. R. at 468-69. The Board further explained:

> As indicated previously, the veteran's difficulty in satisfying the requirements for service connection for PTSD arises not with regard to medical evidence of a clear, current diagnosis of PTSD, nor with regard to medical evidence of a link between his current symptomatology and his claimed in-service stressors–the first and third elements required under 38 C.F.R. § 3.304(f), respectively. His difficulty arises with regard to the second element, verification of the alleged stressors in Vietnam to which he attributes his current PTSD symptomatology.

R. at 6. As noted above, the Da Nang rocket attacks are the only in-service stressors alleged by the veteran and considered by the Board below that the Court will review, because the veteran has abandoned the other alleged stressor arguments asserted before the Board. For a stressor to be sufficient for PTSD, the stressor must meet two requirements:

> (1) A person must have been "exposed to a traumatic event" in which "the person experienced, witnessed, or was confronted with an event or events that involved actual or a threatened death or serious injury, or a threat to the physical integrity of self or others" and (2) "the person's response [must have] involved intense fear, helplessness, or horror."

*Cohen*, 10 Vet.App. at 141 (quoting DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994)).

The veteran does not assert that his exposure to rocket attacks is combat related. If the claimed stressor for PTSD is not combat related, its occurrence must be corroborated by credible supporting evidence. *Id.* at 142. This Court has held that "'[t]here is nothing in the statute or the regulations which provides that corroboration must, and can only, be found in the service records.'" *Dizoglio v. Brown*, 9 Vet.App. 163, 166 (1996) (quoting *Doran v. Brown*, 6 Vet.App. 283, 289 (1994)). However, when a claim for PTSD is based on a noncombat stressor, "the noncombat veteran's testimony alone is insufficient proof of a stressor." *Moreau v. Brown*, 9 Vet.App. 389, 396 (1996). "[C]redible supporting evidence of the actual occurrence of an in-service stressor cannot consist solely of after-the-fact medical nexus evidence." *Id*.

The veteran argues that the Board decision should be reversed because the Board's factual determination that the independent evidence of record does not corroborate the veteran's alleged stressor is clearly erroneous. Mot. at 1. The veteran described the occurrence of Da Nang rocket attacks as follows:

> In February 1967, the first 144mm rockets were fired at Da Nang Airbase. Other attacks occurred in [1967 and 1968]. Incoming rounds would whistle then stop and you knew they were coming down but not where they would hit. This is traumatic in itself. A[n] F-4 Phantom coming in to land would back off their engines which for a time sounded like incoming rounds to me. I awoke many times in total fear, sat up and waited for the explosions. These events so traumatized me that I have taken medications for insomnia and emotional/mental problems for 32 years.

R. at 366. Records for the veteran's unit contain the following descriptions of rocket attacks that occurred while the veteran was stationed at Da Nang:

> 3 Jan 1968. At approximately 0400 hours the Da Nang Air Base came under attack from NVA Forces. Three (3) 530B Fire Trucks and one (1) 5500 gallon Water Tanker was dispatched to VMF-122 Squadron to fight fire in a Hangar which was hit by an enemy Rocket.

> 30 Jan 1968, At approximately 0325 hours, the Da Nang Air Base came under attack from NVA Forces. Enemy rockets hit POL dump and started a large JP-4 fuel blaze, Rockets also hit VMA-AW-242 and VMF-122 flight line starting numerous fires also hit was the Air Force Flare dump.

R. at 454-55. The unit records corroborate the veteran's assertion that enemy rocket attacks occurred during the time period he was stationed at Da Nang.

The Board determined:

> It is entirely possible that the veteran was, in fact, exposed to the stressors he has alleged. Nonetheless, the law and regulations require independent verification of the claimed stressors. The veteran's alleged stressors have not been corroborated by independent evidence, nor has he provided specific, detailed information regarding these events that could permit corroboration of the incidents to which he attributes his PTSD symptomatology. . . . As for the rocket attacks, there is no way, based on the information provided by the veteran, to corroborate that he was anywhere near the targets of such attacks, or was otherwise threatened thereby.

5

R. at 9-10.

The Board decision neglected to cite *Suozzi v. Brown*, 10 Vet.App. 307 (1997), as controlling precedent. Based on *Suozzi*, we conclude that the Board erroneously insisted that there be corroboration of the veteran's personal participation. In *Suozzi*, the Court rejected such a narrow definition for corroboration and instructed that "[t]he Secretary, in insisting that there be corroboration of every detail including the appellant's personal participation . . . , defines 'corroboration' far too narrowly. The veteran has offered new and independent evidence of stressful events and that evidence implies his personal exposure." *Id.* at 311.

The facts in this case are similar to those in *Suozzi*. The veteran in this instance has offered independent evidence of the occurrence of a stressful event, and the evidence implies his personal exposure. In *Suozzi*, the veteran submitted radio logs of transcripts describing the events his company endured, which were independent descriptions of some of the stressors he described. He also submitted a copy of the morning report, referenced in his statement, that tended to substantiate his account of events. *Id.* at 310. Similarly, the veteran in this case submitted his unit log and unit records, (R. at 369, 454-55), independent descriptions of rocket attacks his unit experienced when he was stationed at Da Nang, which would, when viewed in the light most favorable to the veteran, objectively corroborate his claim of having experienced rocket attacks. R. at 369, 454-55. Although the unit records do not specifically state that the veteran was present during the rocket attacks, the fact that he was stationed with a unit that was present while such attacks occurred would strongly suggest that he was, in fact, exposed to the attacks. *Suozzi* makes clear that corroboration of every detail is not required. The Board's finding that "[a]s for the rocket attacks, there is no way[,] based on the information provided by the veteran, to corroborate that he was anywhere near the targets of such attacks, or was otherwise threatened thereby", (R. at 10), appears to suggest that the veteran should have proven his physical proximity to, or firsthand experience with, the attacks. His presence with his unit at the time such attacks occurred corroborates his statement that he experienced such attacks personally. The Court notes that 38 C.F.R. § 3.304(f) only requires, as to stressor corroboration, "credible supporting evidence" that the claimed in-service stressor occurred. The veteran's unit records are clearly credible evidence that the rocket attacks that the veteran alleges, did in fact, occur.

6

Factual findings by the Board will not be overturned by this Court unless they are "clearly erroneous." 38 U.S.C. § 7261(a)(4); *see Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). Under the "clearly erroneous" standard, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Gilbert,* 1 Vet.App. at 53. "Reversal is the appropriate remedy when '[t]here is absolutely no plausible basis' for the BVA's decision and where that decision 'is clearly erroneous in light of the *uncontroverted* evidence in appellant's favor.'" *Hicks v. Brown*, 8 Vet.App. 417, 422 (1995) (*citing Hersey v. Derwinski*, 2 Vet.App. 91, 95 (1992)) (emphasis in original). The Court will reverse the Board's decision because the Board erred in interpreting the corroboration requirement too narrowly in violation of *Suozzi* by requiring the veteran to corroborate his actual proximity to and participation in the rocket attacks on Da Nang. Because the Board neglected to follow *Suozzi*, there is no plausible basis, in light of the uncontroverted evidence of the veteran's exposure to rocket attacks that is contained in his unit records, for the Board's factual determination that the veteran did not corroborate his alleged in-service stressor with independent evidence.

As noted above, the Board has conceded that the veteran has a current diagnosis of PTSD, which establishes the first element for the award of service connection for PTSD, and that, if the veteran's stressors were verified, they would provide the necessary nexus between the current diagnosis of PTSD in 1999 and the veteran's alleged stressor, which would establish the third element for service connection. R. at 4. Because the Board erred in finding that the veteran did not corroborate his in-service stressor, the second element for service connection is now established, and therefore all three elements necessary for the award of service connection for PTSD have been established. On remand the Board is instructed to grant the veteran's claim for service connection for PTSD and to assign the appropriate rating and effective date.

## III.  CONCLUSION

After consideration of the veteran's motion, the Secretary's motion, and the record on appeal, the Court holds that the Board committed error warranting reversal when it determined that the veteran did not corroborate his exposure to rocket attacks while stationed at Da Nang. Accordingly, the Court will grant the veteran's motion and the July 26, 2000, Board decision is REVERSED and

the matter is REMANDED for proceedings consistent with this opinion.